Bobby HENARD, Petitioner,

v.

Herbert NEWKIRK, and Jeffery
Modisett, Respondents.

No. 3:97–CV–0314 AS.

United States District Court,
N.D. Indiana,
South Bend Division.

Dec. 2, 1997.

Bobby Henard, pro se.

Martha J. Arvin, Office of Indiana Atty. Gen., Indianapolis, IN, for respondents.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

On May 2, 1997, *pro se* petitioner Bobby Henard, an inmate at the Indiana State Prison, Michigan City, Indiana ("ISP"), filed a petition seeking relief under 28 U.S.C. § .2254. The response filed by the Attorney General of Indiana on September 17, 1997, demonstrates the necessary compliance with *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir. 1982). On October 20, 1997, the petitioner filed a Traverse and a motion to enter interrogatories with proposed interrogatories attached.

As a preliminary matter, pursuant to the decision of the United States Court of Appeals for the Seventh Circuit in *Hogan v. Hanks,* 97 F.3d 189, 190 (7th Cir.1996), the court now, *sua sponte,* strikes the Attorney General of the State of Indiana, Jeffery Modisett, as a respondent in this matter.

Mr. Henard challenges events that occurred at the ISP in January 1997, claiming that he was denied due process at a Conduct Adjustment Board ("CAB") hearing where he was found guilty of a Code 223 violation (engaging in or encouraging others to engage in a group demonstration), and sanctioned to one year in disciplinary segregation. Mr. Henard's subsequent appeals of the CAB decision were denied by the ISP superintendent and the Adult Operations Disciplinary Review Manager. Mr. Henard claims that, in violation of the Fourteenth Amendment Due Process Clause, he was denied the opportunity to call all of his requested witnesses, and the CAB hearing officer was biased because he allowed another inmate to call the witness requested by Mr. Henard. Mr. Henard further alleges that of the seven inmates charged and found guilty of the same offense, he and the other African–American inmate were given one year segregation while the five white inmates received only six months segregation. He claims that the disparity in sentencing violated the Equal Protection Clause of the Fourteenth Amendment.

### A. Due Process

■ The Fourteenth Amendment of the Constitution provides that no state shall "deprive any person of life, liberty, or property without due process of law." The Constitutional purpose of due process is to protect a substantive interest to which the individual has a "legitimate claim of entitlement." *Olim v. Wakinekona,* 461 U.S. 238, 250–51, 103 S.Ct. 1741, 1748–49, 75 L.Ed.2d 813 (1983). Only if the petitioner has a protected liberty interest in avoiding the more restrictive confinement, may the court move to the second step and examine whether the procedures used to deprive him of that interest were Constitutionally sufficient. *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989).

■ The types of interests that represent "property" or "liberty" for the purposes of the Fourteenth Amendment are not unlimited. *Id.* at 459, 109 S.Ct. at 1908. An interest protected by the Constitution is more than "an abstract need or desire," *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972), or a "unilateral hope." *Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 465, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158

(1981). A protected liberty interest is one to which the plaintiff can show a "legitimate claim of entitlement," *Kentucky Dep't of Corrections,* 490 U.S. at 459, 109 S.Ct. at 1907; *Colon v. Schneider,* 899 F.2d 660, 666 (7th Cir.1990), and arises from either the Constitution or state law. *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983).

■ The Constitution itself does not create a liberty in remaining in the general population. *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). While state laws and regulations can create liberty interests, those interests are "generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 479, 115 S.Ct. at 2297. In *Sandin* the Supreme Court found that transferring a prisoner from the general population to segregation for thirty days "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 486, 115 S.Ct. at 2301. The Supreme Court reaffirmed its previous holding in *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), in which the Court considered whether a prisoner had a liberty interest in avoiding a transfer to a different facility with more restrictive conditions. In *Meachum* the Court held that not every "change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the Due Process Clause." *Id.* at 224, 96 S.Ct. at 2538. Accordingly, a prisoner has no liberty interest in avoiding more restrictive confinement unless the additional restrictions constitute an "atypical, significant deprivation." *Williams v. Ramos,* 71 F.3d 1246, 1249 (7th Cir.1995).

In *Bonner v. Parke,* 918 F.Supp. 1264 (N.D.Ind.1996), this court previously weighed the atypicality of the restrictions on the disciplinary segregation unit at the ISP. Accordingly, the court takes judicial notice of those conditions [1], and finds, as it did in *Bonner,* that the conditions Mr. Henard experiences in segregation are "not significantly more onerous than those found in the general prison population at the ISP." *Bonner,* 918 F.Supp. at 1269.

■ The Seventh Circuit Court of Appeals has recently explained that under *Sandin* the proper comparison is between disciplinary segregation and nondisciplinary segregation; further, the court held that the comparison must be between disciplinary segregation at the petitioner's institution of confinement and nondisciplinary segregation in the state's entire prison system. *Wagner v. Hanks,* 128 F.3d 1173, 1175 (7th Cir.1997). The ISP is not Indiana's most restrictive prison. If the conditions on disciplinary segregation at the ISP are not substantially more restrictive than those imposed on the ISP's general population, they clearly are not substantially more restrictive then the restrictions in the state's most secure prison. *See Wagner v. Hanks,* 128 F.3d 1173, 1174 (the petitioner "must lose unless the conditions of disciplinary confinement in Wabash Valley Correctional Institution are substantially more restrictive than even those in the state's Level V prisons.")

■ The court concludes that Mr. Henard's segregation did not constitute the "atypical and significant hardship" necessary to create a Constitutionally protected liberty interest. Without a protected liberty interest, prison officials could impose the one year segregation "for any reason, or for no reason at all," without Mr. Henard being afforded the procedural safeguards required by the Fourteenth Amendment. *Williams v. Ramos,* 71 F.3d at 1249, citing *Williams v. Faulkner,* 837 F.2d 304, 309 (7th Cir.1988).

■ Mr. Henard complains that prison officials failed to follow the official Adult Disciplinary Policy Procedures, but this argument is of no import in habeas matter. A writ of habeas corpus offers the remedy for persons in custody in violation of the Constitution or laws of the United States. While a state may provide procedures to protect substantive federal rights, the procedures are not in themselves substantive rights protect-

---

1. Mr. Henard did not specifically allege that were significant differences in conditions be-

tween disciplinary segregation, nondisciplinary segregation or the general population.

ed by the Constitution. *Olim v. Wakineko-na,* 461 U.S. at 250, 103 S.Ct. at 1748. "A state ought to follow its laws, but to treat a violation of state law as a violation of the Constitution is to make the federal government the enforcer of state law. State rather than federal courts are the appropriate institutions to enforce state rules." *Archie v. City of Racine,* 847 F.2d at 1217, citing *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *accord Evans v. City of Chicago,* 10 F.3d 474, 481 (7th Cir.1993) ("The Constitution does not authorize federal judges to superintend state and local governments' compliance with their own laws.").

## B. Equal Protection

Mr. Henard additionally claims that his sanction of one year segregation was imposed in violation of the Equal Protection Clause. Mr. Henard claims that he and the other African American inmate found guilty of a Code 223 violation were placed in segregation for one year, while the four white inmates found guilty of the same offense, arising from the same incident, were sanctioned to only six months in segregation. The disciplinary hearing report indicates that the reason for Mr. Henard's particular sanction was the "nature of offense." Mr. Henard submitted affidavits from three of the four white inmates which support Mr. Henard's allegations regarding the charges and sanctions imposed.

The respondent argues that Mr Henard has failed to show that his race was a factor in the finding of guilt. This, however, is not the issue raised by Mr. Henard. Because the respondent has not addressed Mr. Henard's claim that race was a factor in the sentence imposed, the court affords the respondent additional time to show cause why the court should not grant the relief requested based on the petitioner's Equal Protection claim.

## C. Motion to Enter Interrogatories

Mr. Henard submitted proposed interrogatories which he seeks to serve on the respondent and three non-parties. A party may serve interrogatories only upon other parties to the action. Fed.R.Civ.P. 33(a).

Thus, the court could at most authorize interrogatories directed to the respondent. However, unlike civil actions, discovery is not available to a habeas corpus petitioner unless the petitioner can demonstrate "good cause" to order discovery. *Bracy v. Gramley,* 81 F.3d 684, 690 (7th Cir.1996) *citing* Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts; *see also Harris v. Nelson,* 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969) ("it is clear that there was no intention to extend to habeas corpus, as a matter of right, the broad discovery provisions of the [Federal Rules of Civil Procedure]"). Mr. Henard, has not shown "good cause" for authorizing discovery in general, or the particular proposed interrogatories. Moreover, the court has reviewed the proposed interrogatories, and finds that they are not necessary to a resolution of the issues that remain. Accordingly, the court denies Mr. Henard's motion to enter interrogatories.

## D. Conclusion

For the foregoing reasons, the court

(1) **STRIKES** the Attorney General of the State of Indiana, Jeffrey Modisett, as a respondent in this action;

(2) **DENIES** the petitioner's motion to enter interrogatories [docket entry # 21];

(3) **DENIES** the petition for writ of habeas corpus as to the Fourteenth Amendment due process challenge; and,

(4) **DIRECTS THE RESPONDENT TO SHOW CAUSE** on or before January 2, 1998, why the court should not grant the relief requested based on the petitioner's equal protection challenge.

**IT IS SO ORDERED.**